IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL ZAHIR,                 )
      Detainee,              )
      Guantanamo Bay Naval Station   )
      Guantanamo Bay, Cuba;    )
                   )
*Petitioner/Plaintiff,*      )
                   )
                   )    **PETITION FOR WRIT**
                   )    **OF HABEAS CORPUS**
v.                   )
                   )
                   )    No. _____
GEORGE W. BUSH,      )
      President of the United States   )
      The White House     )
      1600 Pennsylvania Ave., N.W.   )
      Washington, D.C. 20500;   )
                   )
DONALD RUMSFELD,    )
      Secretary, United States   )
      Department of Defense   )
      1000 Defense Pentagon   )
      Washington, D.C. 20301-1000;   )
                   )
BRIGADIER GENERAL JAY HOOD,   )
      Commander, Joint Task Force   )
      - GTMO        )
      JTF-GTMO      )
      APO AE 09360; and    )
                   )
COLONEL MICHAEL BAUMGARNER, )
      Commander, Joint Detention   )
      Operations Group, JTF - GTMO   )
      JTF-GTMO      )
      APO AE 09360,    )
                   )
*Respondents/Defendants.*   )

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Abdul Zahir petitions this court for a writ of habeas corpus. A citizen of Afghanistan, he petitions on his own behalf. He is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station in Guantanamo Bay, Cuba ("Guantanamo"). His detention is without lawful basis, without charge, and without access to counsel or any fair process or some kind of hearing by which he can challenge his detention. Petitioner Zahir is being held under color and authority of the President and in violation of the Constitution, laws and treaties of the United States, as well as in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Zahir or to establish in this Court a lawful basis for Petitioner Zahir's detention. Petitioner Zahir also asks this Court to order injunctive and declaratory relief as prayed for below.

## I
## JURISDICTION

1.      Petitioner Zahir brings this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3), and 2242. Petitioner Zahir further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of and the Fifth, Sixth, and Eighth Amendments to the United States Constitution. Because he seeks declaratory relief, Petitioner Zahir also relies on Fed. R. Civ. P. 57.

2.      This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202 as this case involves an actual

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II
## PARTIES

3.     Petitioner Zahir is a citizen of Afghanistan, and upon information and belief a Muslim, who is now, and has been for over three years, incarcerated and held unlawfully in Respondents' custody and control at Guantanamo.

4.     Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Armed Forces.  Petitioner Zahir is being detained pursuant to President Bush's claimed authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) (the "Executive Order").  President Bush is responsible for Petitioner Zahir's unlawful detention and is sued in his official capacity.

5.     Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order, Respondent Rumsfeld has maintained Petitioner Zahir's unlawful custody and control.  Secretary Rumsfeld is sued in his official capacity.

6.     Respondent Brigadier General Jay Hood is the Commander of Joint Task Force-GTMO, the military task force that operates detention facilities at Guantanamo Bay.  He has supervisory responsibility for Petitioner Zahir and is sued in his official capacity.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

7.    Respondent Colonel Michael Baumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Zahir is presently held.  He is the custodian immediately responsible for Petitioner Zahir's unlawful detention.  He is sued in his official capacity.

8.    Respondents are responsible for all activities undertaken by or under the supervision of any agents or employees acting on their behalf.  Respondents are also responsible for all actions undertaken by or under the supervision of private contractors and any agents or employees of private contractors with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees, or such private contractors or their agents or employees.

## IV
## STATEMENT OF FACTS

9.    Upon information and belief Petitioner Zahir is not, nor has he ever been, an enemy alien, a lawful or unlawful belligerent, or a combatant of any kind under any definition adopted by the United States Government in any civil or military proceeding.

10.    Petitioner Zahir seeks to enforce his right to a judicial determination of the lawfulness of his detention.

11.    Upon information and belief Petitioner Zahir is not, nor has he ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-4-

United States there." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 26   (June 28, 2004) (internal

quotation marks omitted).

12.     Petitioner Zahir seeks to enforce his right to a judicial determination by an appropriate

and lawful authority of whether there is a lawful and factual basis for Respondents'

determination that he is either an "enemy combatant" as defined by the United States

Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by

the Executive in the Combatant Status Review Tribunals.

13.     Upon information and belief, Petitioner Zahir is not now and at the time of his seizure

and detention was not a member of the Taliban Government's armed forces or Al

Qaeda.  Prior to his detention, he did not commit any violent act against any American

person or property.  He had no involvement, direct or indirect, in the terrorist attacks on

the United States on September 11, 2001, the ensuing armed conflict in Afghanistan or

eslewhere, or any act of international terrorism attributed by the United States to Al

Qaeda.

14.     Petitioner Zahir remains incarcerated at Guantanamo, a territory over which the United

States exercises exclusive jurisdiction and control.

15.     Petitioner Zahir has not been afforded any procedure to object to his detention that

would satisfy his rights under the most fundamental common law notions of due

process, the U.S. Constitution, the laws and treaties of the United States, or customary

international law.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

**The Joint Resolution**

16.     Following the September 11, 2001 attacks on the United States, the United States, at the

direction of President Bush, began a massive military campaign against the Taliban

government then in power in Afghanistan.  On September 18, 2001, a Joint Resolution

of Congress authorized President Bush to use force against the "nations, organizations,

or persons" that "planned, authorized, committed, or aided the terrorist attacks on

September 11, 2001, or [that] harbored such organizations or persons." Joint

Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat.

224 (Jan. 18, 2001) (the "Joint Resolution").

17.     As Petitioner Zahir did not participate in the armed conflict at any point in time, he is

not properly detained pursuant to President Bush's authority as Commander-in-Chief,

under the laws and usages of war, or the Joint Resolution.

**The Executive Order**

18.     On November 13, 2001, Respondent Bush issued the Executive Order which authorizes

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has reason to

believe:

a.      is or was a member of the organization known as al Qaeda;

b.      has engaged in, aided or abetted, or conspired to commit, acts of international

terrorism, or acts in preparation therefor, that have caused, threaten to cause, or

have as their aim to cause, injury to or adverse effects on the United States, its

citizens, national security, foreign policy, or economy; or

c.      has knowingly harbored one or more individuals described in subparagraphs a.

and b.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-6-

*See* the Executive Order.  President Bush must make this determination in writing.  The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

19. The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face.  The Executive Order authorizes the indefinite confinement of detainees without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law, and does not provide for right to counsel, rights to notice of consular protection, or rights to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  The Executive Order expressly bars review by any court.  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

20. The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Zahir was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Zahir at Guantanamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Zahir was, and is, being made by Respondents in the United States and in this judicial district.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-7-

21.     Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Zahir is subject to the Executive Order.

22.     Petitioner Zahir is not subject to the Executive Order.

23.     Petitioner Zahir has not been, and is not being, detained lawfully either pursuant to the Executive Order, the Joint Resolution, President Bush's authority as Commander-in-Chief and/or the laws and usages of war in that Petitioner Zahir has been denied the process due to him under the common law, the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, and international law.

### Guantanamo Bay Naval Station

24.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantanamo Bay, Cuba.  In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantanamo.  Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

25.     Prisoners incarcerated at Guantanamo have the right to test the legality of their detention in the federal courts.  *Rasul v. Bush*, 542 U.S. 466 (2004).

26.     Upon information and belief, more than three years ago Respondents Bush and Rumsfeld caused Petitioner Zahir to be transported to Guantanamo, where he has been held ever since in the custody and control of Respondents ever since.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

## The Conditions of Detention at Guantanamo

27.     Since gaining custody and control of Petitioner Zahir, the United States military has

confined him there virtually *incommunicado*.

28.     On information and belief, Petitioner Zahir has been and will continue to be

interrogated repeatedly by agents of the United States Departments of Defense and

Justice and the Central Intelligence Agency, though he has not been charged with an

offense and has not been notified of any pending or contemplated charges.  He has not

appeared before a lawful military or civilian tribunal, and has not been provided access

to counsel or the means to consult with counsel.  He has not been informed of his rights

under the United States Constitution, the regulations of the United States Armed Forces,

the Geneva Conventions, the International Covenant on Civil and Political Rights, the

American Declaration on the Rights and Duties of Man, the 1954 Convention Relating

to the Status of Refugees, or customary international law.  Respondents claim that

Petitioner Zahir should not be informed of these rights.  As a result, Petitioner Zahir

lacks any ability to protect or to vindicate his rights under domestic or international law.

29.     Upon information and belief, Petitioner Zahir has been forced to provide involuntary

statements to Respondents' agents at Guantanamo.

30.     Upon information and belief, Petitioner Zahir has been held under conditions that

violate his constitutional and international rights to dignity, freedom from torture and

freedom from cruel, inhuman and degrading treatment or punishment.  *See, e.g.*, United

Nations Press Release, "United Nations Human Rights Experts Express Continued

Concern About Situation of Guantanamo Bay Detainees," Feb. 4, 2005; International

Committee of the Red Cross (the "ICRC"), Press Release, "The ICRC's Work at

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-9-

Guantanamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.  Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, degrading treatment and the use of dogs to create anxiety and terror - - are interrogation techniques that have been approved for use at Guantanamo by the most senior Department of Defense lawyer.  *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003). Additional details of the cruel, degrading and offensive conditions suffered by detainees at Guantanamo are set out at length in a statement by British detainees that have been released from Guantanamo.  *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf).

31.    In a confidential report to the United States government, the ICRC charged that the U.S. military was intentionally using psychological and physical coercion during their interrogation of prisoners at Guantanamo that is "tantamount to torture."  *See* Neil A.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-10-

Lewis, "Red Cross Finds Detainee Abuse in Guantanamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantanamo participated in planning interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantanamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See Guantanamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantanamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantanamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantanamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantanamo," *New York Times*, Dec. 7, 2004, at A19; Jane Mayer, "The Experiment," *The New Yorker*, July 11 and July 18, 2005. The Associated Press has reported allegations that female Guantanamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to break the will of Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005. The JTF-Guantanamo Commander's Inquiry Team reported in its June 3, 2005 news release that guards at Guantanamo had on at least nine instances defiled the Koran. On June 5, 2005 the

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

Edinburgh Sunday Herald reported that Respondent Hood "said in a written statement released with the new details that his investigation 'revealed a consistent, documented policy of disrespectful handling of the Koran dating back almost two and a half years.'"

32. The unlawful and unconstitutional interrogation techniques used by Respondents at Guantanamo include not only physical and psychological abuse but also other impermissible conduct contrary to the requirements of due process including, upon information and belief, having agents of the Government falsely present themselves as lawyers for the detainees during meetings with detainees for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantanamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

33. Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

34. In published statements, President Bush and Secretary Rumsfeld, and General Lenhert and Colonel Carrico, predecessors of Hood and Baumgarner, respectively, have stated that the United States may hold the detainees under their current conditions indefinitely. See, e.g., Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-12-

United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

35.    According to two United States military prosecutors, the trial system that has been created to determine whether Guantanamo detainees are enemy combatants has been structured to improve the government's chances for conviction, and to deprive the detainees of access to exculpatory evidence.  *See* Neil A. Lewis, "2 Prosecutors Faulted Trials for Detainees," *The New York Times*, August 1, 2005.

36.    According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely.  *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited July 22, 2005).

37.    Counsel for Respondents have also consistently maintained that the United States may hold the Guantanamo detainees under their current conditions indefinitely.  *In re Guantanamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1,

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-13-

2004 Oral Argument on Motion to Dismiss at 22-24, statements of Principle Deputy
Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for
Terror Suspects," *Washington Post*, Jan. 2, 2005, at A1.  Moreover, the Government has
acknowledged plans to begin constructing a new, more permanent facility at
Guantanamo.  Christopher Cooper, "In Guantanamo, Prisoners Languish in a Sea of
Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantanamo
Takes on the Look of Permanency," Jan. 9, 2005.

### Rendition

38.    During interrogations, detainees have also been threatened with rendition or transfer to
countries that permit indefinite detention without charge or trial and/or routinely
practice torture.  Upon information and belief, the United States has secretly transferred
detainees to such countries without complying with the applicable legal requirements
for extradition.  This practice, known as "extraordinary rendition," is used to facilitate
interrogation by subjecting detainees to torture.  *See* Jane Mayer, "Outsourcing Torture:
The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*,
Feb. 14, 2005, at 106.

39.    The U.S. government's practice of extraordinary rendition has been documented by
major American and international news organizations, including, *inter alia*, the
*Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation
(the "BBC").  According to news accounts:

> Since September 11, the U.S. government has secretly transported
> dozens of people suspected of links to terrorists to countries other than
> the United States bypassing extradition procedures and legal formalities,
> according to Western diplomats and intelligence source.  The suspects
> have been taken to countries . . . whose intelligence services have close

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-14-

ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Washington Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Washington Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt ..., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

40.    Upon information and belief, Petitioner Zahir is at risk of being rendered, expelled or extradited without lawful procedures to a country that engages in torture and other unlawful conduct during interrogations and incarceration.

41.    The United States Government has announced that it intends to transfer to Afghanistan an undisclosed number of Afghani citizens detained in Guantanamo.  *See* "U.S. dealing to send most Guantanamo prisoners home," *Washington Post*, August 5, 2005.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES UNLAWFUL DEPRIVATION OF LIBERTY)

42.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

43.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-15-

President Bush has ordered Petitioner Zahir's prolonged, indefinite, and arbitrary detention without due process of law, and the remaining Respondents have carried out those orders. Respondents' actions deny Petitioner Zahir the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

44.    To the extent that Petitioner Zahir's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner Zahir.

45.    Accordingly, Petitioner Zahir is entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## SECOND CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES UNLAWFUL CONDITIONS OF CONFINEMENT)

46.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

47.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Zahir to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-16-

48.     Accordingly, Petitioner Zahir is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

### THIRD CLAIM FOR RELIEF
### (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

49.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

50.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Zahir the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

51.     Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

52.     Respondents are liable for this conduct described above, insofar as they determine the conditions of Petitioner Zahir's confinement and directly or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired to violate the Geneva Conventions.

53.     Accordingly, Petitioner Zahir is entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW
### ARBITRARY DENIAL OF DUE PROCESS)

54.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-17-

55.     By the actions described above, Respondents have denied and continue to deny Petitioner Zahir the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

56.     Because Respondents are detaining Petitioner Zahir "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States," Petitioner Zahir's claim arises under 28 U.S.C. § 2241, and he is entitled to habeas corpus relief.

57.     Petitioner Zahir is entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

58.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

59.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Zahir in order to obtain coerced information or confessions from him, to punish or intimidate Petitioner Zahir, or for other purposes.  Upon information and belief Petitioner Zahir, among other abuses, has been held in and surrounded by conditions of isolation and solitary confinement; constant vulnerability to repeated interrogation and severe beatings; being kept in cages with no privacy; shackled with

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

60.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

61.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and conspired together and with others to commit the acts of torture against Petitioner Zahir.

62.     Upon information and belief Petitioner Zahir has been and is now forced to suffer severe physical and psychological abuse and agony and is entitled to habeas corpus, declaratory, and injunctive relief and other relief to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - WAR CRIMES)

63.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

64.     By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and conspiring to bring about the torture and other inhumane treatment of

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-19-

Petitioner Zahir constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among other laws, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

65.     As a result of Respondents' unlawful conduct, Petitioner Zahir has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

66.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

67.     The acts described herein were calculated to and had the effect of grossly humiliating and debasing Petitioner Zahir, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical and moral resistance to Respondents' unlawful actions.

68.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

69.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Zahir.

70.    Upon information and belief, Petitioner Zahir was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**(ALIEN TORT STATUTE**
**ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)**

71.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

72.    The acts described herein constitute arbitrary arrest and detention of Petitioner Zahir in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Zahir in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-21-

reflected, expressed, and defined in multilateral treaties and other international

instruments, international and domestic judicial decisions, and other authorities.

74.    As a result of Respondents' unlawful conduct, Petitioner Zahir has been and is now

deprived of his freedom, separated from his family, and forced to suffer severe physical

and mental abuse, and is therefore entitled to habeas corpus, declaratory, and injunctive

relief, and such other relief as the court may deem appropriate.

## NINTH CLAIM FOR RELIEF
## (ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

75.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully

herein.

76.    By the actions described above, the Respondents directed, ordered, confirmed, ratified,

and conspired to bring about the enforced disappearance of Petitioner Zahir in violation

of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts

violated customary international law prohibiting enforced disappearances as reflected,

expressed, and defined in multilateral treaties and other international instruments,

international and domestic judicial decisions, and other authorities.

77.    As a result of Respondents' unlawful conduct, Petitioner Zahir has been and is now

deprived of his freedom, separated from his family, and forced to suffer severe physical

and mental abuse, and is therefore entitled to habeas corpus, declaratory and injunctive

relief and such other relief as the court may deem appropriate.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

## TENTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION UNLAWFUL DETENTION)

78.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

79.     Upon information and belief, Petitioner Zahir is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The President lacks the authority to order or direct military officials to detain civilians who are seized away from the theater of war or occupied territory or who were not carrying a weapon against American troops on a foreign battlefield.  *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

80.     By the actions described above, President Bush has exceeded and continues to exceed his authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Zahir and transfer him to military detention, and by authorizing and ordering Petitioner Zahir's continued military detention at Guantanamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and detention of Petitioner Zahir.

81.     The Respondents' seizure and detention of Petitioner Zahir is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioner Zahir's detention is authorized by the Executive Order, that Order exceeds the President's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner Zahir.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-23-

82. To the extent that Respondents assert that their authority to detain Petitioner Zahir derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

83. Accordingly, Petitioner Zahir is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF
### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT UNLAWFUL DETENTION)

84. Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

85. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

86. By arbitrarily and capriciously detaining Petitioner Zahir in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

87. Accordingly, Petitioner Zahir is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-24-

## TWELFTH CLAIM FOR RELIEF
### (VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

88.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

89.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Zahir the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

90.    Accordingly, Petitioner Zahir is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

91.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

92.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Zahir to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

93.    Accordingly, Petitioner Zahir is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-25-

## FOURTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE RIGHT TO COUNSEL
### AND TO ACCESS TO THE COURTS)

94.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

95.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Zahir's right to consult with counsel by conditioning counsel's access to Petitioner Zahir on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Zahir's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

96.     Accordingly, Petitioner Zahir is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE - RENDITION)

97.     Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

98.     Upon information and belief, Petitioner Zahir is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner Zahir to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner Zahir's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

99.     Accordingly, Petitioner Zahir is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-26-

## SIXTEENTH CLAIM FOR RELIEF
### (CONVENTIONS AGAINST TORTURE AND RELATING TO THE STATUS OF REFUGEES - RENDITION)

100.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Petitioner Zahir is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner Zahir to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner Zahir's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

102.    Accordingly, Petitioner Zahir is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- RENDITION)

103.    Petitioner Zahir incorporates by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioner Zahir is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner Zahir to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner Zahir's rights under customary international law, which may be vindicated under the Alien Tort Statute.

105.    Accordingly, Petitioner Zahir is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-27-

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner Zahir prays for relief as follows:

1. Grant a Writ of Habeas Corpus and order Respondents to release Petitioner Zahir from his current unlawful detention;

2. Order that Petitioner Zahir be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility in this judicial district to conduct proceedings under the supervision of the Court to vindicate his rights;

3. Order that Petitioner Zahir cannot be transferred to any other country without the specific, written agreement of Petitioner Zahir and Petitioner Zahir's counsel while this action is pending;

4. Order that Petitioner Zahir cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture;

5. Order Respondents to allow counsel to meet and confer with Petitioner Zahir, in private and unmonitored attorney-client conversations;

6. Order Respondents to cease all interrogations of Petitioner Zahir, direct or indirect, while this litigation is pending;

7. Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Zahir;

8. Order and declare that the Executive Order is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

9.  Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Zahir without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law;

10. Order that Respondents advise Petitioner Zahir and his counsel whenever the government proposes or is about to move Petitioner Zahir to a different location or change Petitioner Zahir's status in any way; and

11. Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner' Zahir's rights under the common law, the United States Constitution, federal statutory law and international law.

EXECUTED August 11, 2005.

ABDUL ZAHIR, PETITIONER

by:

Robert A. Gensburg
Attorney for Petitioner
Fed. Bar ID #000243107
P. O. Box 248
St. Johnsbury, VT 05819
(802) 748-5338

LAW OFFICES OF
GENSBURG, ATWELL
& BRODERICK
P.O. BOX 248
ST. JOHNSBURY, VT
05819-0248

-29-