



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUL ZAHIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1623 (RWR) |
| | ) | |
| GEORGE W. BUSH et al., | ) | |
| | ) | |
| Respondents. | ) | |

MEMORANDUM ORDER

Petitioner Abdul Zahir, a detainee at Guantánamo Bay, has
moved under Section I.E.2 of the Case Management Order ("CMO")
for an order allowing him to propound to the respondents 84
numbered interrogatories, many containing multiple sub-parts, and
eight requests for production of documents. The respondents
oppose Zahir's requests, arguing that they are overbroad, that
they exceed the scope of discovery that was contemplated by
Section I.E.2 of the CMO, and that Zahir fails to make the
necessary showing that granting his requests would produce
evidence material to the lawfulness of Zahir's continued
detention. Because Zahir does not support several of his
requests by showing how the requested discovery will enable him
to rebut the factual basis for his detention, his motion for
leave to file those requests will be denied. However, because
the respondents do not show how answering several of Zahir's





-2-

requests would be unfairly disruptive or burdensome to them, Zahir's motion for leave to propound those requests will be granted.

<u>BACKGROUND</u>

Zahir has been a detainee at the United States Naval Base in Guantánamo Bay, Cuba ("Guantánamo") since b(1)          The respondents allege in their amended factual return that for approximately three years before the Taliban fell from power in December 2001, Zahir "worked closely as the translator and trusted assistant of a senior al-Qaida commander in Afghanistan" named Abdul Hadi al-Iraqi ["al-Hadi"], who was purportedly al-Qaida's "commander in northern Kabul," and that Zahir "assisted in the management of al-Qaida guesthouses, procurement of supplies and funding for al-Qaida's fighters, coordination of al-Qaida and Taliban military activities, and the handling of money for al-Qaida-sponsored activities." (<u>See</u> Amended Factual Return, Ex. 1, Declaration of Rear Admiral David Thomas ("Thomas Decl.") at ¶¶ 1, 3.) According to the amended factual return, b(1)

b(1) that provided al-Qaida affiliates with "safe venues to liase and to rest between frontline deployments," served as "facilitation hubs for training of fighters," and were reserved for "individuals with specific, definable connections to al-Qaida," but were not available to the general public. (<u>Id.</u> at ¶ 18.) b(1)





-3-

b(1)

b(1)                                                    (Id. at ¶ 19.)   The

respondents also allege that after December 2001, Zahir "became

an active member of an anti-coalition cell that planned to use

violence against the armed forces of the United States and its

allies" in order to force them to leave Afghanistan, and that

Zahir supported this cell by "arranging funding from al-Qaida."

(Id. at ¶ 1.)   Zahir is further alleged to have been "involved

in" a grenade attack perpetrated against a vehicle carrying

foreigners in Zormat, Afghanistan; to have "associated" with

senior al-Qaida members including Usama bin Laden, Ayman al-

Zawahiri and Mohammed Atef; and to have had "repeated

interactions with Mullah Obaidullah, the Taliban Minister of

Defense, senior Taliban commanders, and other extremist

individuals and organizations."   (Id.)

     Zahir has asserted that he is not a member of al-Qaida, and

that he "did not know al-Hadi was a member of al-Qaida."   (Thomas

Decl. at ¶ 23.)   As for the grenade attack in Zormat,

Afghanistan, the amended factual return states that Zahir

acknowledged that he was a passenger in the car driven by the

person who perpetrated the grenade attack.   However, Zahir

claimed that he and another passenger attempted to convince the

perpetrator not to go through with the attack.   (Id. at ¶¶ 52-

56.)





-4-

Zahir's counsel has sent the respondents a set of 84 interrogatories and eight requests for production of documents. Subsequently, the respondents informed Zahir's counsel by letter that they had "produced the majority of documents responsive to this request" and that "much of the information responsive to [Zahir's] request was produced in attachments to the Government's [amended] factual return."  (See Pet'r's Mot. to Propound Interrogatories and for Production of Documents ("Pet'r's Mot.") at 1.)  Zahir now moves for an order allowing him to propound this discovery.  Respondents oppose.

DISCUSSION

The relevant portion of the CMO states:

> The Merits Judge may, for good cause, permit the petitioner to obtain limited discovery beyond that described in [Section I.E.1]. . . .  Discovery requests shall be presented by written motion to the Merits Judge and (1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful . . . and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government.

(CMO, November 6, 2008, docket entry #53 ("CMO"), § I.E.2.)

Several of the interrogatories and requests for production that Zahir seeks to propound do not appear likely to lead to the discovery of material information that would undermine the legitimacy of his detention.  In interrogatory 1, Zahir asks the respondents to provide him with the identities of the person or





-5-

people who answer the interrogatories.  In interrogatories 29 to
31, Zahir asks respondents whether they have evidence showing
that Zahir dealt with chemical or biological weapons, and if the
respondents have such evidence, where they obtained it from.  In
interrogatory 33, Zahir asks the respondents to identify all
information in the amended factual return that the government
learned after September 3, 2004.  In interrogatories 34 to 37,
Zahir asks the respondents whether they possessed any information
that Zahir used the name b(1) ████████ and if so, when he used
that name.  In interrogatories 48 to 51, Zahir asks the
respondents about details pertaining to a purported rocket attack
that occurred in 2002 against a United States installation near
Ghazny, Afghanistan.

    Zahir does not show that the answers to any of these
questions are likely to contain material information that
undermines the legitimacy of his detention, nor does Zahir match
these requests with any assertions against him in the amended
factual return.  For example, Zahir notes that he is referred to
by the name b(1) ████████ in one place in the amended factual
return, but he does not explain in any way how that reference
pertains to any of the factual assertions made against him, or
how the information about Zahir's purported use of that name
would in any way undermine the factual basis for his detention.
Because Zahir does not make a showing that answering these





-6-

questions is likely to produce material evidence demonstrating the unlawfulness of his detention, his request to propound these interrogatories will be denied.

Zahir also seeks to propound several requests that would likely produce legal theories instead of factual evidence that would affect the legitimacy of Zahir's detention.  In interrogatories 3 to 6, Zahir requests legal definitions and positions pertaining to the legal basis for Zahir's detention. In interrogatories 40 to 45, Zahir asks the respondents whether they claim that Zahir was or is a member of al-Qaida or the Taliban, and if so, how the respondents define the word "member." In interrogatories 52 and 74 to 83, Zahir seeks further explanation from the respondents about the legal justification for his detention.  These topics, about which respondents bear disclosure obligations under Section I.B of the CMO, are not evidence pertinent to the **factual basis** for a petitioner's detention discoverable under I.E.2.  Therefore, Zahir's requests to propound these interrogatories will be denied.

Interrogatory 2 is in effect not an interrogatory but a document request that duplicates what the CMO already required the respondents to produce under Section I.E.1 with which the respondents state they have complied.  Even if it could properly be viewed as an interrogatory, it lacks the specificity required





-7-

under Section I.E.2 (1) and (2) of the CMO.  Therefore, this
request will be denied.

Interrogatories 7 to 13 pertain to the respondents'
allegation that Zahir provided services at guesthouses or
training camp facilitation hubs affiliated with al-Qaida.
Interrogatories 14 to 28 request that the respondents specify
their position about whether Zahir engaged in armed combat or
other types of battle against the United States and coalition
forces, and if so, when and where he did so.  The respondents
oppose answering these interrogatories because they claim that
Zahir has not shown that the answers would yield evidence
material to Zahir's case.  While there is some merit to the
respondents' argument, it is conceivable that Zahir could use the
information that the responses to these interrogatories would
provide in his favor, and the respondents provide absolutely no
evidence of how answering these interrogatories would unfairly
disrupt or burden the respondents.  However, Zahir has not
matched these requests with a specific assertion found in the
amended factual return that the answers would be likely to
undermine, and thus they stray from the type of discovery
anticipated under the CMO.  Zahir's request for leave to issue
interrogatories 7 to 28 will be denied without prejudice.  If
Zahir can, with specificity, point to an assertion in the amended
factual return that the answers to these questions might call





-8-

into question, he may re-file his motion for leave to propound these interrogatories.

In interrogatory 32 and request for production 1, Zahir asks whether the respondents obtained information about Zahir from al-Hadi, and for all records containing or referring to statements made by al-Hadi about Zahir.  Zahir supports this request by arguing that one of the three principal justifications the respondents give for detaining Zahir is that he allegedly performed administrative work and provided translation services for al-Hadi, who was purportedly a high level al-Qaida operative. The respondents oppose these requests by arguing that the amended factual return places no reliance on any statement made by al-Hadi about Zahir.  They further argue that Zahir would receive any statement made by al-Hadi about Zahir that is exculpatory under Section I.D.1 of the CMO, and that some of the information responsive to this request could be classified at a level above the level at which Zahir's counsel could have access to the information because Zahir's counsel does not have a "need to know" the information.

The amended factual return does not claim to rely upon any statements made by al-Hadi, and Zahir's counsel would receive any statement made by al-Hadi that is exculpatory under section I.D.1 of the CMO.  However, a significant assertion against Zahir is that he worked for al-Hadi, a claim that Zahir appears to rebut





-9-

by arguing that he did not know that al-Hadi worked for al-Qaida.
Therefore, statements made by al-Hadi that could affect the
determination of whether Zahir knew that al-Hadi was a member of
al-Qaida should be provided to Zahir's counsel.  If the
respondents identify information that complies with this request,
yet the respondents believe that the information should not be
provided to Zahir's counsel because he does not need to know it,
the respondents may file the information with the court under
seal accompanied by a motion to deny disclosure, explaining with
specificity why the information is not relevant to Zahir's
detention.

In interrogatories 38 and 39 and request for production 7,
the petitioner asks the respondents whether an individual named
C6 to whom reference is made in the document C2
C2 was ever detained by the government, and if he was,
whether he produced information which the government relies upon
for detaining Zahir.  Zahir also requests any documents
pertaining to C6 that contain information relevant to his
detention.  The respondents oppose, arguing that the evidence
regarding C6 that is cited in the amended factual return
all derived from the petitioner himself.  While the respondents
clearly have an obligation under Section I.D.1 of the CMO to
provide Zahir with information taken from or about C6 that
is exculpatory for Zahir, Zahir has failed to show how these





-10-

requests are narrowly tailored to produce evidence that would
undermine the factual basis for Zahir's detention.   Therefore,
these requests will be denied.

In interrogatories 46 and 47, Zahir asks whether the
Peshawar Cell of al-Qaida ever committed any acts against United
States or coalition forces, personnel, or property, and if so,
when and where such attacks occurred.   In interrogatories 53 to
59 and request for production 5, Zahir asks for any evidence the
respondents have, in addition to Zahir's statements cited in the
amended factual return, showing that Zahir ███████████████████
████████████████████████████████████████████████████████
████████████████████████████ and that Zahir was involved in
making time-delayed explosive devices.   Respondents oppose these
requests on two grounds.   They argue that Zahir has not shown
that these requests would produce evidence that will materially
advance Zahir's case in part because the respondents' assertions
are primarily based upon Zahir's own statements, and that any
shortcoming in the evidence pertaining to the nature of the
Peshawar Cell, Zahir's ███████████████████████████████████
██████████████████████████████████████████████████████████
or Zahir's knowledge that the group he was purportedly
associating himself with engaged in violent acts through the use
of time-delayed explosive devices, are appropriately addressed as
challenges to the sufficiency of the respondents' evidence.



UNCLASSIFIED//FOR PUBLIC RELEASE



-11-

As was previously mentioned, the respondents allege as part of the factual basis for Zahir's detention that after December 2001, Zahir "became an active member of an anti-coalition cell that planned to use violence against the armed forces of the United States and its allies" in order to force them to leave Afghanistan, and that Zahir supported this cell by "arranging funding from al-Qaida."  (See Thomas Decl. at ¶ 1.) The respondents further allege that Zahir [b(1)]
[b(1)]
[b(1)] and that Sur Gul, a member of the group Zahir was associating himself with after December 2001, was an "explosives expert" who provided training to Zahir regarding "how to initiate the time-delayed detonation of a bomb."  (Id. at ¶¶ 41, 44.)  Thus, specific information about the nature and extent of the combatant activities of this anti-coalition cell is centrally relevant to portions of the of the factual basis cited by the respondents for Zahir's detention.  Therefore, if the respondents possess any information undermining the assertion that the Peshawar Cell took part in or otherwise planned to engage in hostile activities against the United States or its allies, the respondents will be ordered to produce that evidence to Zahir.  Otherwise, these requests will be denied.

In interrogatories 60 to 68 and requests for production 2 and 3, Zahir seeks information about the respondents' evidence,





-12-

or lack of it, regarding his role in the grenade attack in
Zormat, Afghanistan, including any statements made by the victims
of the attack or their driver.  The respondents oppose, arguing
that Zahir's requests do not seek evidence that would facilitate
his ability to challenge the legality of his detention.  The
amended factual return cites only to Zahir's own descriptions of
the attack, including his exculpatory comments about the attack.
Zahir has not shown that seeking information about any other
evidence concerning the attack will enable him to rebut the facts
the respondents advanced about this attack for which Zahir
himself was reportedly the source.

In interrogatories 69 to 72 and request for production of
documents 5, Zahir seeks information regarding whether the
government has evidence that Zahir would seek out Usama bin Laden
and several associates.  Because Zahir does not connect these
requests to any specific assertion in the amended factual return,
they will be denied.

In interrogatory 73, Zahir seeks the circumstances under
which b(1), b(6) provided a statement on which the
respondents rely in the amended factual return.  While the
respondents argue that Zahir has not made any showing or
assertion that the statements at issue were coerced, the
respondents have not made plain how Zahir could have access to
such important information before seeking it from respondents,



UNCLASSIFIED//FOR PUBLIC RELEASE

-13-

given the restricted nature of these habeas proceedings.  In
order to facilitate for the petitioner a meaningful opportunity
to challenge the factual basis of his detention, the
circumstances of a petitioner's statement, and the circumstances
of an inculpatory statement made against a petitioner that are
relied upon by the respondents, must be provided in total to that
petitioner.  Therefore, this request will be granted.

In interrogatory 84 and request for production 7, Zahir
seeks evidence pertaining to chemicals that were found
purportedly in Zahir's residence when he was captured.  The
respondents directly state in their opposition that they will
"not rely on Petitioner's possession of these . . . chemicals to
justify his detention[.]"  (Resp'ts' Opp'n to Pet'r's Mot. for
Disc. at 31.)  Zahir has not shown how these requests are likely
to produce evidence that would undermine the factual basis for
detention, and they will be denied.

In request for production 4, Zahir requests production of a
ledger that the respondents claim Zahir used to maintain a
balance of certain finances for al-Qaida.  (See Thomas Decl. at
¶ 37.)  The respondents object to this request, arguing that the
ledger is irrelevant and would not produce exculpatory
information because they do not actually rely on the ledger, but
instead rely upon intelligence reports describing the ledger.
That distinction is not fatal, as Zahir's examination of the





-14-

ledger itself could demonstrate that reports about its nature are mistaken or misleading, and would undermine the factual basis for Zahir's detention.  This request will be granted.

In request for production 6, Zahir seeks an audio/visual recording of his Combatant Status Review Tribunal ("CSRT") proceeding.  The respondents oppose, arguing that they do not rely upon Zahir's testimony at his CSRT proceeding to justify his detention, and that they provided with the amended factual return a transcript of the CSRT proceeding.  Zahir makes no showing that the recorded version of the transcript he already possesses would undermine the factual basis for his detention.  This request will be denied.

## CONCLUSION AND ORDER

For the reasons mentioned above, it is hereby

ORDERED that petitioner's motion [85] for leave to take discovery be, and hereby is, GRANTED in part and DENIED in part. Zahir's request to propound interrogatories 32 and 73 and requests for production 1 and 4 are GRANTED.  Respondents shall also respond to interrogatories 46, 47, and 53 to 59, and request for production 5 with information they possess undermining the assertion that the Peshawar Cell planned to or did take part in hostilities against allied forces.  Respondents shall answer these requests by October 30, 2009.  Zahir's request to propound his requests otherwise is DENIED.



UNCLASSIFIED//FOR PUBLIC RELEASE



-15-


SIGNED this 23rd day of September, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge



UNCLASSIFIED//FOR PUBLIC RELEASE